UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE CUNNINGHAM,

      Plaintiff,

v.

HENRY FORD HEALTH SYSTEM,

      Defendant.
_____/

Case No. 2:17-cv-11015

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS OR TO STAY PROCEEDINGS TO COMPEL ARBITRATION [13]**

On March 30, 2017, Plaintiff Michelle Cunningham filed a complaint alleging retaliatory termination in violation of Title VII, the Michigan Elliott-Larsen Civil Rights Act, and the Americans with Disabilities Act ("ADA"). On September 11, 2017, Defendant Henry Ford Health System ("HFHS") filed a motion to dismiss or stay the proceeding and to compel arbitration. The Court reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons stated below, the Court will grant HFHS's motion.

**BACKGROUND**

Cunningham began working for HFHS on August 25, 2015. She was terminated in May 2016.[1] Prior to her employment with HFHS, Cunningham interviewed with HFHS and completed pre-employment paperwork and training. Cunningham contends that neither the interview process, the job screening questions (ECF 17-3, PgID 115–16), her offer letter (ECF 17-4, PgID 118–19), nor any other physical document "alerted [her] to the fact that a binding arbitration agreement would be a condition for her employment." ECF 17, PgID

---

[1] The circumstances surrounding Cunningham's termination are not relevant to the current motion.

95. She further explains that she affixed her physical signature to a number of documents, but not the arbitration agreement.

Instead, HFHS provided the arbitration agreement online. On August 4, 2015, Cunningham logged into HFHS's "HR 'Connect'" system believing she was "completing ministerial forms and basic employment on-boarding documents." *Id.* at 96. The process proceeded sequentially and required Cunningham to "complete one step before she could proceed to the next." *Id.* at 96–97. The system did not provide an opportunity to review the documents collectively or to download any document for review. In fact, Cunningham states that she "does not even recall the Arbitration Agreement [and] so had no knowledge of its import." *Id.* at 97. She further notes that the arbitration agreement does not contain language advising the employee to consult with an attorney or to review it carefully. *Id.* After encountering the arbitration agreement on the "gated" HR Connect system, Cunningham clicked on a box accompanied by the following language: "Agreed to and acknowledged by the Employee" and "checking the checkbox above is equivalent to a handwritten signature." ECF 17-8, PgID 135. Based on these facts, Cunningham asserts that the arbitration agreement is unenforceable because she did not knowingly and voluntarily waive her right to a jury trial by entering into an arbitration agreement with HFHS.

## STANDARD OF REVIEW

When reviewing a motion to compel arbitration, the Federal Arbitration Act instructs courts to "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

agreement." 9 U.S.C. § 4. The party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d. Cir. 1997), *cert denied*, 522 U.S. 948 (1997)). The required showing "mirrors that required to withstand summary judgment[.]" *Id.* The Court therefore views all facts and reasonable inferences in favor of the non-moving party and must determine whether there is a genuine issue as to any material fact.

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate disputes arising out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[2] The provision establishes "a liberal policy favoring arbitration agreements" unless "overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citations omitted).

When applying the FAA, the Court must determine whether (1) the parties agreed to arbitrate, (2) the claims are within the scope of the agreement to arbitrate, (3) there are any federal statutory claims asserted that Congress intended to be nonarbitrable, and (4) there are any remaining claims that should be stayed pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

---

[2] The Supreme Court has construed the interstate commerce language broadly. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 282 (1995) (concluding that the multistate nature of an agreement was evidenced in part by use of a material that traveled in interstate commerce).

3

I.   Whether The Parties Agreed To Arbitrate

The Court must first consider whether the parties agreed to arbitrate. Courts generally apply "ordinary state-law principles that govern the formation of contracts" when analyzing whether the parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Michigan law, the validity of a contract depends upon whether (1) the parties are competent to contract, (2) the contract involves a proper subject matter, (3) legal consideration exists, (4) mutuality of agreement exists, and (5) mutuality of obligation exists. *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991). Here, neither party disputes their competency to contract, the propriety of the contract's subject matter, or the existence of legal consideration, mutuality of agreement, or mutuality of obligation. In fact, Cunningham agreed to and acknowledged the arbitration agreement on August 4, 2015 at 7:53 PM by checking an online box "equivalent to a handwritten signature[.]" ECF 17-8, PgID 135; *see also* Mich. Comp. Laws §§ 450.833 and 450.837 (state laws regarding electronic signatures and their enforceability). There are no facts in the record that create a genuine issue of whether a valid arbitration agreement exists.

Even if a valid arbitration agreement exists, the "enforceability of an arbitration agreement may . . . turn on whether the employee was given adequate notice and knowingly waived [her] right to litigate claims in court." *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 161 n.34 (1999) (citing *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153 (9th Cir. 1998)). Whether an employee knowingly and voluntarily waived her right to jury trial depends upon "(1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the

waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 420–21 (6th Cir. 2011) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)).

First, Cunningham's experience, background, and education were sufficient to understand the waiver. Cunningham received a high school diploma or a G.E.D., attained an Associate's Degree in Health Care Administration, possessed twenty years of customer service experience, and considered herself "detail oriented, highly organized" and capable of "multitasking under pressure." ECF 17-3, PgID 115–16.

Second, Cunningham also had sufficient time to consider the waiver and to consult with an attorney. Cunningham signed on to the human resources portal on August 4, 2015 and did not begin work until August 25, 2015. She therefore possessed nearly three weeks to ask questions about the waiver or consult with an attorney. The requirement that Cunningham have time to consult an attorney is not accompanied by a concomitant requirement that the employer "advise [her] to seek legal counsel[.]" ECF 17, PgID 103. Moreover, there is no evidence that, had Cunningham sought a physical copy of any documentation during those three weeks, she would have been denied that request.

Third, the waiver is clear. The waiver contains a heading on the first page—"**AGREEMENT FOR MANDATORY ARBITRATION (New Hires)**"—and a disclaimer before the signature—"**BOTH PARTIES UNDERSTAND AND AGREE THAT THEY ARE WAIVING THEIR RIGHTS TO HAVE COVERED CLAIMS DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY.**" ECF 17-8, PgID 133–34.

Fourth, there was sufficient consideration for the waiver. The Sixth Circuit has recognized that continued employment was sufficient consideration for a waiver of the right to a jury trial. *Hergenreder*, 656 F.3d at 421.

Finally, considering the totality of the circumstances, Plaintiff's education and experience, the time provided to consider the waiver, and the clarity of the waiver overcome other considerations. Cunningham contends that the waiver did not contain notes such as "read carefully" or "legally binding," but Cunningham declared herself detail-oriented and signed the arbitration agreement. Even if Cunningham's provision of a physical signature on other documents misled "her as to the importance and significance of the Arbitration Agreement itself[,]" that fact does not overcome the clarity of the agreement's language. ECF 17, PgID 103. Furthermore, even if Cunningham cannot recall reviewing the arbitration agreement, *id.* at 97, employers are not under an obligation to require their employees to read pre-employment arbitration-related documents to satisfy adequate notice. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013). Moreover, a person "who signs a contract is presumed to know its contents, and, . . . if [she] has had an opportunity to read the contract which [she] signs [she] is bound by its provisions." *Stout*, 228 F.3d at 715 (quoting *Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952)). In the totality of the circumstances, based on objective indicia, Cunningham received adequate notice, signed the agreement, and thus knowingly and voluntarily waived her right to a jury trial. The arbitration agreement is therefore enforceable.

II. <u>Scope of the Arbitration Agreement</u>

Next the Court evaluates the scope of the arbitration agreement. The parties do not dispute the language of the arbitration agreement. The arbitration agreement applies to

"claims arising under State or Federal common law, statute, regulation or constitution" including claims under state or federal civil rights statutes and the ADA. ECF 17-8, PgID 133. Cunningham asserts claims under Title VII, a federal civil rights act; the Elliot-Larsen civil rights act, a state civil rights act; and the ADA. Her claims fall within the ambit of the arbitration agreement's clear language.

III.     Whether Any Federal Claims are Nonarbitrable

Third, the Court reviews whether any federal claims are nonarbitrable. The Supreme Court has permitted arbitration of numerous federal statutory rights. *See, e.g., 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (recognizing that the Age Discrimination in Employment Act is arbitrable); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (noting that the Sherman Act, the Securities, Exchange Act of 1934, RICO, and the Securities Act of 1933 may all be subject to arbitration). Arbitration of federal statutory rights is acceptable so long as "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum[.]" *Gilmer*, 500 U.S. at 28 (citing *Mitsbuishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)). The Sixth Circuit has held that "Congress did not intend to exclude Title VII claims from arbitration." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 509 (6th Cir. 2004).

The only remaining question is whether plaintiff carried her burden of showing that "Congress intended to preclude a waiver of judicial forum" for ADA claims. *Gilmer*, 500 U.S. at 26. Courts look to the text of the statutes, the statutes' legislative histories, or to "an 'inherent conflict' between arbitration" and the statutes' underlying purposes. *Id.* Nothing in the record suggests that Congress intended for the ADA to preclude waiver of the judicial forum through arbitration agreements. Moreover, nothing indicates that Cunningham will

not be able to effectively vindicate her ADA causes of action in the arbitral forum. "In light of the strong federal policy in favor of arbitrability," the Court concludes that the case should proceed to arbitration according to the terms of the arbitration agreement. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 680 (6th Cir. 2003).

IV. Remaining Claims To Be Stayed

Finally, the entirety of Cunningham's complaint is subject to arbitration. It is therefore proper for the Court to dismiss the case. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss or to stay proceedings and compel arbitration [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are **COMPELLED** to arbitrate in accordance with the underlying contract.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 20, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 20, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager